IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| POLK 33 LENDING, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-1647 (MN) |
| | ) |
| MARK J. SCHWARTZ, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

P. Bradford deLeeuw, DELEEUW LAW LLC, Wilmington, DE; David J. Stone, BRAGER EAGEL & SQUIRE, P.A., New York, NY – Attorneys for Plaintiff

Kevin R. Shannon, Jonathan A. Choa, Daniel M. Rusk, IV, POTTER ANDERSON & CORROON LLP, Wilmington, DE – Attorneys for Defendant.

August 18, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Pending before the Court is the motion (D.I. 6) of Defendant Mark J. Schwartz ("Schwartz") to dismiss the Complaint (D.I. 1) filed by Plaintiff Polk 33 Lending, LLC ("Polk") asserting breaches of fiduciary duty and corporate waste. The motion has been fully briefed. (D.I. 7, 10, 11). For the reasons discussed below, Schwartz's motion is granted.

## I.  BACKGROUND

### A.  Aerogroup's 2017 Bankruptcy Proceedings.

Aerogroup was a privately-held company that sold women's footwear. (D.I. 1 ¶ 1). "By summer 2017, Aerogroup's business fortunes had declined precipitously," and in June of that year, Aerogroup retained Piper Jaffray & Co. ("Piper") to explore, among other things, "a potential sale of the Company." (*Id.* ¶19). In the ensuing months, "Piper reached out to more than 150 potential investors and more than 34 potential purchasers." (*Id.*). Although Aerogroup received draft term sheets in August 2017, it did not proceed with any transactions. (*Id.*). On September 15, 2017, Aerogroup filed voluntary petitions for relief under Chapter 11 ("the Bankruptcy") in the Delaware Bankruptcy Court. (*Id.* ¶ 16).

Schwartz is the founder and CEO of Palladin Consumer Retail Partners, LLC ("Palladin"). (*Id.* ¶ 15). Palladin owned approximately 75% of Aerogroup's equity, as well as a "significant debt investment in Aerogroup" – approximately $21.6 million of Aerogroup's prepetition debt. (*Id.* ¶ 16). Schwartz also served as a director of Aerogroup. (*Id.* ¶ 18). According to the Complaint, shortly after the Bankruptcy was filed, Mr. Schwartz "took over the role of" Aerogroup's CEO. (*Id.* ¶ 4).

On October 15, 2017, Aerogroup filed a motion in the Bankruptcy Court for authorization to obtain debtor-in-possession financing ("DIP Financing") from Polk. (D.I. 7, Ex. 3).[1] The motion was supported by the Declaration of Aerogroup's Chief Restructuring Officer, Mark Weinsten, who explained that the Company intended to pursue a sale of its business or some or all of its assets ("the Sale") and explained that:

> the new money provided by the DIP Facility will be used to fund, among other things, the purchase of new inventory for the Debtors' go-forward business lines . . . Furthermore, authorizing the Debtors to incur the DIP Facility to fund the Debtors' operations through the closing of a sale would greatly increase the likelihood that the Debtors can preserve their businesses and, in turn, achieve a value-maximizing outcome for their assets.

(D.I. 7, Ex. 4 ¶¶ 8, 10).  On November 2, 2017, the Bankruptcy Court approved Polk as the DIP Lender.  (D.I. 1 ¶ 7).

**B.   GBG**

In connection with the Bankruptcy, the Company continued to pursue a Sale with the assistance of Piper.  (D.I. 1 ¶¶ 20-24).  Beginning in September 2017, Aerogroup and GBG USA Inc. ("GBG") began discussing a potential transaction ("the GBG Transaction"), pursuant to which, among other things, "Aerogroup would restructure as an intellectual property holding company, licensing to GBG the right to use the AEROSOLES trademark and related intellectual

---

[1] Polk objects to Schwartz's reliance on certain documents outside of the Complaint, including documents filed in the Bankruptcy Court (some of which Polk also relies on) and Aerogroup's public charter.  It is well-settled, however, that such public documents may be properly the subject of judicial notice.  *See Recovery Fund II USA LLC v. Rabobank, Nat'l Assoc.*, C.A. No. 18-2039-MN-JLH, 2020 WL 509166, at *2 n.3 (D. Del. Jan. 31, 2020) ("In resolving the motions to dismiss, the Court . . . may take judicial notice of the court records from the Nexity bankruptcy."); *Leonard v. Stemtech Int'l, Inc.*, C.A. No. 12-86-LPS-CJB, 2012 WL 3655512, at *3 n.6 (D. Del. Aug. 24, 2012) ("It is well settled that publicly-filed documents, such as certificates of incorporation, may properly be the subject of judicial notice").

property in specified territories and to design, manufacture, import and sell footwear and hosiery in the specified territories." (*Id.* ¶ 21).

On December 5, 2017, Aerogroup and GBG executed an Asset Purchase Agreement ("the APA") with respect to the GBG Transaction, which contemplated the negotiation and execution of additional agreements and the satisfaction of certain other pre-closing conditions. (*Id.* ¶ 30; D.I. 7, Ex. 5). The APA required Aerogroup to use its "reasonable best efforts" to do all things necessary to consummate the GBG Transaction. (D.I. 7, Ex. 5 §§ 6.1, 6.2). The GBG Transaction was required to be approved by the Bankruptcy Court. (D.I. 1 ¶ 30).

According to the Complaint, "almost immediately after the parties executed the APA, GBG began to drag its feet in the negotiations and soon attempted to renegotiate material terms." (*Id.* ¶ 31). The renegotiation purportedly involved Schwartz making unspecified "concessions." (*Id.* ¶¶ 32, 40). Nevertheless, on January 17, 2018, shortly before the Confirmation Hearing in the Bankruptcy Court, GBG sent Aerogroup a notice terminating the APA. (*Id.* ¶ 40).

C. **The Sale Of Aerogroup And Conclusion Of The Bankruptcy.**

After the failure of the GBG transaction, Polk "elected not to exercise [its] rights and remedies," and "instead, supported" Aerogroup's attempt to try to find an alternative transaction. *In re Aerogroup Int'l, Inc. (Polk Lending 33, LLC v. THL Corp. Fin., Inc.)*, 601 B.R. 571, 579 (Bankr. D. Del. 2019).

According to the Complaint, "Schwartz reactivated Piper, and Piper rushed to carry out a public auction of Aerogroup's remaining assets in a very accelerated timeframe given the limited liquidity." (D.I. 1 ¶ 41). On February 20, 2018, Alden Global Capital LLC purchased Aerogroup's assets for approximately $24 million. (*Id.* ¶42). As the Bankruptcy Court found:

> the Debtors' assets were not liquidated in a rapid, piece-meal fashion. Instead, the assets were sold together in an orderly process,

3

> that included (i) marketing the company by Piper Jaffray, (ii) entering into an arms-length asset purchase agreement with a stalking horse bidder, (iii) holding an auction under approved bidding procedures that included a competitive bidding environment, and (iv) resulting in the fair, reasonable and adequate consideration for those assets.

*In re Aerogroup Int'l, Inc.*, 601 B.R. at 593.

After the Alden transaction closed, in a filing dated July 24, 2018, Aerogroup (*i.e.*, "the Debtors") advised the Bankruptcy Court that:

> the Debtors have stated repeatedly that they do not believe there are any claims against their directors and officers. Most troubling still, [the DIP Lender] . . . references and alleged 'determination' by Mr. Weinsten that certain deposits for foreign inventory purchases 'should not have been paid' and goes on to allege that 'the officers and directors in question caused [Aerogroup] to send the funds overseas nonetheless.' . . . The Debtors are entirely unaware of the basis for these allegations and dispute that any D&O Claims exist.

(D.I. 7, Ex. 6 ¶ 12).

On January 15, 2020, the Bankruptcy Court dismissed Aerogroup's consolidated Chapter 11 cases. (D.I. 1 ¶ 11). On December 3, 2020, Polk filed the Complaint in this Action asserting claims against Schwartz.

## II. LEGAL STANDARD

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). The Court is not, however, required to accept as true bald assertions, unsupported conclusions or unwarranted inferences. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). This plausibility standard obligates a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 506 U.S. at 678.

### III.  DISCUSSION

####   A.   Standing

Schwartz argues that because Polk is asserting commercial tort claims for injuries to Aerogroup, Polk does not have standing to assert its claims. Polk counters that the DIP Credit Agreement and the DIP Order gave it the right to assert claims for injury to Aerogroup. The Court agrees with Schwartz.

"Property interests are created and defined by state law." *Butner v. U.S.*, 440 U.S. 48, 55 (1979). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Id.* (citing *Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 (1961)).

As Schwartz notes in his reply brief (D.I. 11 at 4-5), in *In re American Cartage, Inc.*, 656 F.3d 82 (1st Cir. 2011), the court held that a general lien granted by a bankruptcy court was subject to the requirements of UCC 9-108 to perfect an interest in commercial tort claims. *Id.* at 89. And

because the lien granted by the bankruptcy court did not specifically describe a commercial tort claim as required by UCC 9-108, a subsequent state law foreclosure did not transfer title to the commercial tort claim. *Id.* That case is informative here.

The Delaware version of the Uniform Commercial Code ("DCC") provides that a security interest in a commercial tort claim is insufficiently described when described only by type of collateral. 6 Del. C. § 9-108(e)(1). Such interests in commercial tort claims must instead be specifically identified. *See, e.g., In re JMF CAB, Inc.*, 614 B.R. 648, 650-52 (Bankr. D. Mass. 2020) (finding that a bank did not identify certain commercial tort claims with sufficient specificity to obtain a security interest); *Epicentre Strategic Corporation-Michigan v. Perrysburg Exempted Village Sch. Dist.*, No. 3:04-CV-7467, 2005 WL 4109509, at *2 (N.D. Ohio 2005) (stating that a commercial tort claims was not described in a security agreement with sufficient particularity to meet the burden imposed by UCC 9-108). Here, there is no question that the claims at issue arose after entry of the DIP Order on November 2, 2017. The question is whether the DIP Credit Agreement identified the claims with the requisite specificity to convey a security interest in those claims to Polk.

The DIP Credit Agreement provided only that the collateral subject to Plaintiff's security interest for the DIP Facility included "all commercial tort claims (including D&O Claims)." (D.I. 7, Ex. 3 at 4 (definition of Collateral)). This is the overgeneralized "type of collateral" identification that is insufficient according to DCC Section 9-108(e)(1) and did not convey to Polk a security interest in the D&O claims. And because Plaintiff did not have a perfected security interest in the D&O Claims, it could not foreclose on those claims. Plaintiff did not acquire title to the D&O Claims and therefore has no standing to assert them.

6

### B. Claims for Breach of Fiduciary Duty[2]

Polk argues two bases for its claims of breach of fiduciary duty under Delaware law: buying inventory and "excluding Piper" from the negotiations which led to GBG pulling out. There is no dispute that the claims arose before January 17, 2018 when GBG refused to close. And there is also no dispute that there is a three year statute of limitations, such that the conduct at issue must fall between December 3, 2017 and January 17, 2018. The Complaint, however, fails to identify any specific conduct by Schwartz during the six-week period between December 3, 2017 and January 17, 2018. The claims are dismissed on this basis.

### C. Corporate Waste

"The standard for adequately pleading corporate waste is high and rarely satisfied." *Higher Educ. Mgmt. Grp., Inc. v. Mathews*, C.A. No. 9110-VCP, 2014 WL 5573325, at *11 (Del. Ch. Nov. 3, 2014). "Directors are guilty of corporate waste, only when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." *Glazer v. Zapata Corp.*, 658 A.2d 176, 183 (Del. Ch. 1993). "A claim of waste will be sustained only in the rare, 'unconscionable case where directors irrationally squander or give away corporate assets.'" *Mathews,* 2014 WL 5573325, at *11 (citation omitted).

Here, Polk has not met that standard. Polk asserts corporate waste based on (1) Schwartz's decision to exclude Piper, Aerogroup's authorized investment banker, from the negotiations of the GBG Transaction and (2) Schwartz's decision to have Aerogroup purchase and pay for inventory in the absence of a signed deal with GBG and in the face of GBG's conduct in negotiating the

---

[2] Although the Court has found that Polk does not have standing to assert the current claims, it addresses the substance of the claims for completeness.

transaction. Both of these actions are asserted to be "grossly negligent" and conduct that "no reasonable director would have engaged in."

As to the allegation regarding Piper, the Complaint fails to plausibly allege how Schwartz's role with regard to the GBG Transaction could be deemed "corporate waste." The allegations are wholly conclusory (*i.e.*, that "no reasonable director would have engaged" in that conduct without explanation). *Criden v. Steinberg*, C.A. No. 17082, 2000 WL 354390, at *3 (Del. Ch. Mar. 23, 2000) (dismissing waste claims that are "wholly conclusory").

As to the allegation regarding inventory, Aerogroup provided and received consideration when it ordered inventory (and provided the related down payments) to continue operations as a going concern. The fact that Aerogroup, based on subsequent events, needed only some of the inventory to fulfill orders does not retroactively render such an ordinary course transaction to be "waste." *See Protas v. Cavanagh*, C.A. No. 6555-VCG, 2012 WL 1580969, at *9 (Del. Ch. May 4, 2012) (a finding of waste is inappropriate "even if hindsight proves that the transaction may have been ill-advised") (citation omitted). Thus, Polk's corporate waste claims are dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is GRANTED.[3] An appropriate order will issue.

---

[3] As Plaintiff cannot cure the standing issue, its claims are dismissed with prejudice.